**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**
**AT KNOXVILLE**
**DECEMBER SESSION, 1997**

FILED

April 23, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **No. 03C01-9702-CR-00053** |
| **Appellee** | ) | |
| | ) | **KNOX COUNTY** |
| **vs.** | ) | |
| | ) | **Hon. Richard Baumgartner, Judge** |
| **THOMAS JEROME ELDER,** | ) | |
| | ) | **(Attempt to Commit Murder** |
| **Appellant** | ) | **in the second degree)** |

For the Appellant:

**Julie A. Martin**
Attorney at Law
P. O. Box 426
Knoxville, TN  37901-0426

For the Appellee:

**John Knox Walkup**
Attorney General and Reporter

**Peter M. Coughlan**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

**Randall E. Nichols**
District Attorney General

**Robert Jolley**
Asst. District Attorney General
City-County Building
Knoxville, TN  37902

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

## O P I N I O N

The appellant, Thomas Jerome Elder, appeals as of right from his conviction for criminal attempt to commit murder in the second degree.[1] Following his jury trial, the Knox County Criminal Court imposed a twelve year sentence in the Tennessee Department of Correction to be served consecutively to federal sentences for convictions for cocaine distribution and related crimes. On appeal, the appellant presents three issues for our review:

(1) Whether the evidence was sufficient to support his conviction for criminal attempt to commit second degree murder;

(2) Whether the trial court committed reversible error by failing to instruct the jury on the charge of attempted voluntary manslaughter; and,

(3) Whether the trial court erred by imposing the maximum sentence allowed for a Range I, standard offender of a Class B felony.

After review, we affirm the trial court's judgment.

### Facts

The proof at trial established that, in 1992, the appellant and the victim in this case, Steven Drew, were jointly engaged in the criminal enterprise of distributing drugs. The appellant supplied drugs to Drew who, in turn, sold those drugs on the street. Because Drew purchased his drugs from the appellant, the appellant permitted him to use one of the street corners in the appellant's "territory," which was known as "posting." The area "posted" by Drew was a street corner in Austin Homes, an east Knoxville neighborhood. During an encounter between the two on February 19, 1992, the appellant initially spoke with Drew about a mutual acquaintance, Lisa, whom the appellant had casually dated. The two briefly argued about the fact that Lisa had been "coming to see [the victim] over in Austin Homes." Drew related that Lisa and the appellant did not have a "real close relationship" and that they both "saw other people

---

[1]The appellant was indicted for criminal attempt to commit first degree murder.

. . . ." The conversation then changed to the sale of drugs. When Drew told the appellant that he had found a new supplier of drugs, the appellant ordered Drew to leave the area he had "posted." Half an hour later, the appellant returned and asked Drew why he still remained on the street corner. Drew then informed the appellant that "it's a free country." The appellant replied, "You think I'm playin'; I'll kill you." Four hours later, the appellant returned to the street corner. Drew had just completed a drug sale when he was shot twice by the appellant from an approximate distance of six feet. The bullets struck the victim in his leg and lower back. Fifteen to twenty people witnessed the crime but no one came forward to testify to the events they observed.

At trial, Dr. Hugh Hyatt, the attending surgeon, testified that he examined the victim when he was brought into the hospital in February 1992. Dr. Hyatt characterized the wounds as serious. One bullet struck the victim's left leg and the other entered the sacrum in the lower back area. Dr. Hyatt further testified that the gunshot wound, located near a major artery, was "a penetrating wound which involved the entire depth of the body." After opening the victim's abdomen, a diverting colostomy was performed which involves "a division of the colon to prevent any further spillage of fecal material into the pararectal tissues." The defense presented no proof. At the conclusion of the evidence, the jury found the appellant guilty of the lesser offense of attempted second degree murder.

**I. Sufficiency of the Evidence**

In the appellant's first issue, he contends that the evidence is insufficient to support his conviction for attempt to commit second degree murder. When reviewing a trial court's judgment, the appellate court will not disturb a verdict of guilt unless the facts in the record and inferences which may be drawn from it are insufficient as a matter of law for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In other words, this court will not reevaluate or reweigh the evidence introduced at trial.

It is presumed that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Since a verdict of guilt removes the presumption of a defendant's innocence and replaces it with a presumption of guilt, the defendant has the burden of proof on the sufficiency of the evidence at the appellate level. Grace, 493 S.W.2d at 476.

In support of his argument, the appellant contends that the State failed to prove that the shooting was a "knowing" attempt to murder the victim. In effect, the appellant argues that his conduct was not reasonably certain to cause death, as evidenced by the fact that the victim was shot at close range in the leg and lower back. This argument, however, ignores the fact that, previous to the shooting episode, the appellant had clearly told the victim, "You think I'm playin'; I'll kill you." After silently approaching Drew from the rear, the appellant shot the victim twice. The wounds were described as serious, near a major artery, and required surgery. In sum, in reviewing the issue of the appellant's intent, we are guided not by his marksmanship but, rather, by the circumstances surrounding the shooting.

In order to obtain a conviction for attempted second degree murder in this case, the State is required to prove that the appellant acted with the intent to cause the knowing killing of another, believing his conduct would cause the result without further conduct on his part. See Tenn. Code Ann. §§ 39-12-101(a)(2) and 39-13-210(a).[2]

---

[2]We note that the trial court's jury instruction on criminal attempt was incorrect. Rather than charging the applicable provision, Tenn. Code Ann. § 39-12-101(a)(2), the trial court charged § 39-12-101(a)(1), which involves conduct measured by the defendant according to the circumstances as he believes them to be, rather than as they existed. For further analysis, see the discussion below. Notwithstanding, we find the error harmless. Tenn. R. App. P. 36(b).

For instructional purposes, it must be recognized that our criminal code has established three distinct types of criminal attempts:
> (1) Intentionally engaging in action or causing a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be. Tenn. Code Ann. § 39-12-101(a)(1). This type of

Whether the appellant "knowingly" attempted to kill his victim is a question of fact for the jury. Intent, which can seldom be proven by direct evidence, may be deduced or inferred by the trier of fact from the character of the assault, the nature of the act and from all the circumstances of the case in evidence. See State v. Holland, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993). We find the evidence sufficient to support the jury's verdict of attempted second degree murder, i.e., that the appellant's conduct was reasonably certain to cause the victim's death, based upon the use of a deadly weapon, the number of wounds inflicted, the seriousness of the wounds and the appellant's express statement, hours before the shooting, that he intended to kill the victim. Tenn. R. App. P. 13(e). This issue is without merit.

## II. Proposed Jury Instruction Concerning Attempted Voluntary Manslaughter

In the appellant's second issue, he contends that the trial court committed reversible error by failing to charge the jury on attempted voluntary manslaughter. The appellant argues that the victim's testimony concerning their discussion of the girlfriend, Lisa, supported proof that he shot the victim during a state of passion induced by

---

attempt is designed to reject the defense of impossibility. Examples include receiving stolen property that was not, in fact, stolen, attempt to steal from an empty house or empty pocket, offering a bribe to a person believed to be a juror who is not, etc.

  2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part. Tenn. Code Ann. § 39-12-101(a)(2). This is the most common type of attempt. Examples would include the intentional or knowing shooting of a victim not resulting in death, an unsuccessful rape, robbery, etc. Both types (1) and (2) deal with situations where the actor has done all he intends to do, but where the crime nevertheless has not been committed.

  (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense. Type three attempts involve those situations where the actor has taken a "substantial step" in preparing and planning the commission of the offense, yet has not done all that he intends to do. The problem is to distinguish between acts of perpetration (which may not be criminal) and a criminal attempt. In this instance, criminal liability depends upon the actor having taken a "substantial step" in a corroborated course of conduct planned to culminate in the commission of a crime. Tenn. Code Ann. § 39-12-101(a)(3) and (b); see also MODEL PENAL CODE Criminal Attempt, Section 5.01. Examples would include reconnoitering the place for the commission of the crime, the possession of materials to be employed in the commission of the crime that are specifically designated for such unlawful use or that can serve no lawful purpose of the actor under the circumstances, and lying in wait for the contemplated victim of the crime. For a general discussion of inchoate crimes and criminal liability, see Section 5.01, MODEL PENAL CODE.

adequate provocation, thus warranting an instruction on manslaughter. The appellant argues that, if "any" evidence is introduced of a lesser offense, the trial court is under a duty to charge the lesser, contending that to do otherwise would usurp the jury's function.

A trial court has the duty, in criminal cases, to fully instruct the jury on the general principles of law relevant to the issues raised by the evidence. In other words, the court must instruct the jury on those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. This obligation includes giving instructions on lesser offenses included in the indictment, without any request on the part of the defendant. See Tenn. Code Ann. § 40-18-110(a)(1990). However, there is no constitutional right to a jury instruction on a lesser offense in every case. See Keeble v. United States, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995 (1973).

Before an instruction on a lesser offense is warranted, the trial court must make two essential determinations. First, in order to comport with the constitutionally guaranteed notice requirements, the instruction must set out an offense which is a lesser offense of the offense charged in the indictment. See State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996); see also U.S. CONST. amend. VI; Hagner v. United States, 285 U.S. 427, 430, 52 S.Ct. 417, 418-419 (1932). A lesser "grade or class" of offense is established by the legislature and is determined simply by looking at the offenses set forth in a statutory chapter and part. Trusty, 919 S.W.2d at 310. In contrast, an offense is "lesser included" in another "only if the elements of the greater offense, as those elements are set forth in the indictment, include but are not congruent with, all the elements of the lesser." Trusty, 919 S.W.2d at 310-311 (quoting Howard v. State, 578 S.W.2d 83, 85 (Tenn. 1979)). Thus, as presented in the case *sub judice*, attempted voluntary manslaughter is a lesser offense of attempted first degree murder because it is a lesser grade or class of that offense. See generally Tenn. Code Ann.

6

§ 39-13-201 *et seq.* (1991). However, attempted voluntary manslaughter is not a lesser included offense of attempted first degree murder because the elements of first degree murder are not congruent with the elements of voluntary manslaughter. Compare Tenn. Code Ann. § 39-13-202 with Tenn. Code Ann. § 39-13-211.

Although voluntary manslaughter is a lesser offense[3] of first degree murder, the trial court's inquiry is not complete. The trial court must next determine whether such an instruction on attempted voluntary manslaughter is warranted by the evidence. See State v. Vance, 888 S.W.2d 776, 780 (Tenn. Crim. App. 1994). Obviously, where "there is no proof in the record which would support the instruction," no jury instruction on a lesser offense need be submitted to the jury. See Trusty, 919 S.W.2d at 311. Nonetheless, the dilemma facing the trial court remains: what quantum of proof is necessary to warrant the charging of a lesser offense.

In determining when an instruction should be given, we are mindful that the ultimate goal of criminal proceedings should be a solemn search for the truth, so that one accused of a crime will be convicted or acquitted depending on the sufficiency of the evidence when measured against the reasonable doubt standard of proof. See Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 2789 (1979); In re Winship, 397 U.S. 358, 34, 90 S.Ct. 1068, 1073 (1970). The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Jackson, 443 U.S. at 315, 99 S.Ct. at 2789; In re Winship, 397 U.S. at 364, 90 S.Ct. at 1073. The relevant question upon review of a criminal conviction, be it the trial court or an appellate court, is whether, "after viewing the evidence in the light most favorable to the prosecution,[4] any rational trier of fact could

---

[3]The term "lesser offense," as used throughout the remainder of this opinion, refers both to a lesser grade offense and a lesser included offense.

[4]This standard preserves the factfinder's role as the weigher of the evidence. See Clewis v. State, 922 S.W.2d 126, 148 (Tex. Crim. App. 1996).

have found the essential elements of the crime beyond a reasonable doubt."[5]   See Tenn. R. App. P. 13(e); Tenn. R. Crim. P. 29(a).   Consistent with the due process principles announced in In re Winship, 397 U.S. at 364, 90 S.Ct. at 1073, the United States Supreme Court held, in Keeble, that:

it is now beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury to rationally find him guilty of the lesser offense and acquit him of the greater.

Keeble v. United States, 412 U.S. at 208, 93 S.Ct. at 1995 (internal footnote omitted)(emphasis added); see also Trusty, 919 S.W.2d at 311; Fed. R. Crim. P. 31(c). Accordingly, before instructing a jury on a lesser offense, the trial court must determine whether the evidence, when viewed in the light most favorable to the defendant's theory of the case, would justify a jury verdict in accord with the defendant's theory, and would permit a rational trier of fact to find the defendant guilty of the lesser offense and not guilty of the greater offense.[6]   See  Trusty, 919 S.W.2d at 311; see also  People v. Austin, 576 N.E.2d 505, 507 (Ill. App.), perm. to appeal denied, (Ill. 1991); State v. Pierce, 927 P.2d 929, 934 (Kan. 1996); State v. Wilkins, 415 N.E.2d 303, 308 (Ohio 1980); Brandau v. Commonwealth, 430 S.E.2d 563, 564-565 (Va. App. 1993); State v.

---

[5]See also  Jackson v. Virginia, 443 U.S. at 317-319, 99 S.Ct. at 2788-2789.

[6]Previous appellate decisions in this state have employed differing terminology when defining the measure of proof necessary to require the giving of an instruction on a lesser offense. Such terminology is illustrated by the following:

(1)  where there is any evidence introduced as to a lesser offense, regardless of the amount or convincing force. Vance, 888 S.W.2d at 781. "[T]he cases are clear that if there is any evidence which reasonable minds could accept as to any such offenses, the accused is entitled to the appropriate instructions." Id. (quoting Johnson v. State, 531 S.W.2d 558, 559 (Tenn. 1975) (emphasis added);

(2)  where there are "any facts that are susceptible of inferring guilt of any lesser included offense." Trusty, 919 S.W.2d at 310 (quoting State v. Wright, 618 S.W.2d 310 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1981));

(3)  only if there is evidence introduced which would support a conviction for that offense. "[D]efendants are entitled to jury instructions on all lesser included offenses as defined in Howard and on all offenses which are a lesser grade or class of the charged offense, if the evidence would support a conviction for the offense." Trusty, 919 S.W.2d at 311; State v. Cleveland, 959 S.W.2d 548, 553 (Tenn. 1997).

Application of any one of these three standards, when reviewing the evidence in the light most favorable to the defendant's theory of the case, are consistent and are necessarily encompassed within the standard announced in Keeble and adopted by this court in the present case.  However, we note that other variations of the standard, e.g., State v. Howard, 926 S.W.2d 579, 586-587 (Tenn. Crim. App. 1996).("relatively scant testimony"); State v. Ruane, 912 S.W.2d 766, 782 (Tenn. Crim. App. 1995) ("slight" evidence); would be inconsistent with the standard announced in Keeble.

Foster, 528 N.W.2d 22, 26 (Wis. Ct. App.), perm. to appeal denied, (Wis. 1995).

Again, the appellant argues that the trial court's determination that a lesser offense would not support a conviction constitutes an impermissible invasion of the jury's role as fact finder. Cf. Howard, 926 S.W.2d at 586-587; State v. Summerall, 926 S.W.2d 272, 278 (Tenn. Crim. App. 1995); Ruane, 912 S.W.2d at 782. We disagree. The standard pronounced in Keeble and adopted herein preserves the integrity of the jury as fact finder by ensuring that the jury is instructed as to a lesser offense only when that offense constitutes a valid, rational alternative to the charged offense. If a jury were instructed on a lesser offense even though the evidence did not raise it or the offense was only raised by "slight" or "relatively scant" evidence, then the instruction would constitute an invitation to the jury to return a compromise or otherwise unwarranted verdict. See State v. Piper, 261 N.W.2d 650, 654 (N.D. 1977); Arevalo v. State, 943 S.W.2d 887, 889 (Tex. Crim. App. 1997); State v. Melvin, 181 N.W.2d 490, 494 (Wis. 1970), overruled on other grounds by, 198 N.W.2d 63 (Wis. 1972). Thus, a determination of whether an instruction on a lesser offense should be given to the jury is not solved by merely determining that the crime charged includes the lesser offense because juries are not given the freedom or discretion to pick and choose what offense the accused should be found guilty of. See State v. Williford, 307 N.W.2d 277, 282 (Wis. 1981) (citations omitted). Indeed, absent such a standard regarding the quantum of proof necessary to trigger an instruction on a lesser offense, the trial judge who charges a lesser offense based upon less than sufficient evidence would be faced with the absurd necessity, predicated upon its own invited error, of entering a judgment of acquittal following the jury's guilty verdict on the lesser offense.[7] See Tenn. R. Crim. P. 29(a). Thus, we conclude: the jury is bound by the evidence and should be limited

_____

[7]We acknowledge the vital role of the trial court in whose hands the Constitution places "the responsibility for safeguarding the integrity of the jury trial, including the right to have a case withheld from the jury when the evidence is insufficient as a matter of law to support a conviction." See United States v. Gainey, 380 U.S. 63, 68, 85 S.Ct. 754, 758 (1965). The trial court has the duty to reasonably assist and instruct the jury so as to avoid a miscarriage of justice. Thus, the determination of whether an instruction on a lesser offense is required, becomes a crucial factor essential to maintaining the integrity of judicial proceedings.

to those lesser offenses which a rational view of the evidence will sustain and does not convince beyond a reasonable doubt that the elements of the greater crime exist.[8] See Melvin, 181 N.W.2d at 494.

In the case now before us, the appellant argues that the jury should have been instructed on the lesser grade offense of attempted voluntary manslaughter. Reviewed in the light most favorable to the appellant, the evidence at trial indicated that prior to the shooting the appellant and the victim had "argued" over their mutual acquaintance with Lisa. This discussion terminated and the conversation turned to business, *i.e.*, "sale of drugs." This conversation ended with the appellant ordering the victim to leave the area. Thirty minutes later, the appellant returned and threatened to kill the appellant. Four hours later, the appellant again visited the street corner, approached the victim from behind, and shot the victim twice.

The trial court found that there is no "evidence in my judgment that the jury could possibly have used to find provocation sufficient under the statute to justify a charge of attempted voluntary manslaughter." We agree. Even though evidence of an argument was introduced at trial, this evidence is not sufficient for a rational trier of fact to find the element of provocation nor the requisite "state of passion." See Tenn. Code Ann. § 39-13-211. The "argument" was followed by an interval of four and one-half hours before the appellant's return to the scene. Moreover, the appellant's threat, "I'm going to kill you," and subsequent attack on the victim from behind would not necessarily acquit the appellant of the greater offense. Under these circumstances, the evidence, when viewed in the light most favorable to the defendant's theory of attempted voluntary manslaughter, would not have permitted a jury to have rationally found him guilty of attempted voluntary manslaughter and acquitted him of the greater

---

[8]A defendant is entitled to an instruction on a lesser offense only in cases where the jury could rationally find him guilty of the lesser offense and not guilty of the greater crime. Thus, for example, a person charged with rape who denies any involvement in the crime is either guilty of rape or of no offense at all. See State v. Fields, No. 11 (Tenn. Crim. App. at Jackson, Mar. 20, 1991), perm. to appeal denied, (Tenn. Jul. 1, 1991); see also People v. Thompson, 342 N.E.2d 445 (Ill. App. 1976).

offenses. Accordingly, the trial court was under no duty to instruct on this lesser offense.

### III. Sentencing

In the appellant's last issue, he contends that the trial court erred in its imposition of a twelve year sentence. Review, by this court, of the length, range, or manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d)(1990). This presumption only applies, however, if the record demonstrates that the trial court properly considered relevant sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In making our review, this court must consider the evidence heard at trial and at sentencing, the presentence report, the arguments of counsel, the nature and characteristics of the offense, any mitigating and enhancement factors, the appellant's statements, and the appellant's potential for rehabilitation. Tenn. Code Ann. §§ 40-35-102,-103(5),-210(b) (1990); see also State v. Byrd, 861 S.W.2d 377, 379 (Tenn. Crim. App. 1993) (citing Ashby, 823 S.W.2d at 168). The burden is on the appellant to show that the sentence imposed was improper. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401(d).

The appellant contends that the trial court erred in failing to consider two relevant mitigating factors when imposing his sentence.[9] First, he claims that, because he was twenty years old on the date of the offense, he lacked substantial judgment while committing the offense. Tenn. Code Ann. § 40-35-113(6)(1990). However, the trial court found this factor inapplicable to the appellant's case. As the trial court stated:

> The proof I've heard in this case and the proof that I've heard-- extensive proof that I've heard in a number of days of hearings with respect to Mr. Elder's conduct throughout his lifetime indicates to me that he was, if anything, extremely street wise, extremely street experienced, that he was-- that he did not lack any substantial judgment in his conduct of creating business in which he chose to engage. He knew exactly what

---

[9]The trial court also found three enhancing factors, however, the propriety of these factors are not challenged on appeal.

he was doing on the street. He conducted an extensive drug operation. He employed individuals in that operation. He employed the use of firearms. This is not a situation where he lacked substantial judgment in committing this offense.

The application of this mitigating factor is not determined simply by the chronological age of the offender but, rather, upon the offender's "youth in context" of various circumstances tending to demonstrate his or her ability or inability to appreciate the nature of his or her conduct. State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993); see, e.g., State v. Carter, No. 01C01-9312-CC-00447 (Tenn. Crim. App. at Nashville, Apr. 27, 1995), perm. to appeal denied, (Tenn. Sept. 5,1995). The record supports the trial court's finding. The evidence does not preponderate against the trial court's rejection of this factor.

Second, the appellant contends, pursuant to Tenn. Code Ann. § 40-35-113(8) (1990), that he suffered from a mental condition that reduced his culpability for the offense. The court stated with regard to this factor:

> Again, the Court found after several days of hearings that Mr. Elder's I.Q. is probably that--substantially lower than that of a normal person. But I also found and believe sincerely in my heart that, notwithstanding the fact that his intelligence quotient may be somewhat low, that his ability to adapt and live and survive and conduct a business and conduct his everyday living experiences was not deficient. As a matter of fact, he was very efficient at doing what he did. And I don't think that, again, he suffered from a mental condition or a physical conviction that reduced his culpability for committing this crime.

The record amply supports the trial court's finding. This issue is without merit.

Accordingly, the judgment of the trial court is affirmed.

12

_____
DAVID G. HAYES, Judge


CONCUR:


_____
DAVID H. WELLES, Judge


_____
THOMAS T. WOODALL, Judge